# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN DE LA CRUZ, ) | 1:05cv0658 DLB |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. ) | |
| JO ANNE B. BARNHART, Commissioner ) of Social Security, ) | |
| Defendant. ) | |

## **BACKGROUND**

Plaintiff Carmen De La Cruz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 17, 2005, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her applications for supplemental security income and disability insurance benefits on July 22, 2002, alleging disability since April 30, 1998, due to severe pain in her arms and legs. AR 68-71, 78-87, 216-219. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-51, 54-58, 59. On September 28, 2004, ALJ Rocklin Lyons held a hearing. AR 231-247. On November 23, 2004, ALJ Lyons determined that Plaintiff was not disabled. AR 17-20. On March 25, 2005, the Appeals Council denied Plaintiff's request for review. AR 6-8.

<u>Hearing Testimony</u>

ALJ Lyons held a hearing on September 28, 2004, in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. An interpreter also appeared. AR 231.

Plaintiff testified that she was 57 years old and completed the fourth or fifth grade in Mexico. She has lived in the United States since 1980, but cannot speak English. She is a legal resident. AR 234-235. She lives with her 24 year old daughter. AR 235. She does not have a driver's license and does not know how to drive. AR 235.

Plaintiff last worked in 1997 or 1998. AR 236. She testified that she could no longer work because her hand, arms, legs and hips hurt too much from arthritis. AR 236. Dr. Shah is her treating physician and she began seeing him in May 2004. AR 239. She currently takes Darvocet and Celebrex for pain. AR 239-240.

Plaintiff testified that she stays in the house all day and does the "tasks that a house requires," such as cooking. She sometimes goes shopping with her daughter and attends church regularly. AR 240-241. Last year, she traveled to Mexico by plane when her son died. AR 241.

She had surgery for her varicose veins about four years ago and they no longer bother her. AR 242.

When questioned by her attorney, Plaintiff testified that she has pain in her legs, arms, hands, hip and sometimes her back. AR 242. She has difficulty lifting things because things

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

sometimes slip out. AR 242. She thought she could lift and carry five to ten pounds and stand for about one hour. AR 243. She thought she could sit for less than half an hour. AR 243. She has to lay down and elevate her legs two to three times a day. AR 243. She thought she could walk one block. AR 244. She can bend over a little, but would have trouble standing again after kneeling. AR 246.

She testified that she could not perform any of her past jobs because the work was too fast. AR 244. Her medications help by taking her pain away "a little," but cause irritation of her stomach. AR 244. On a bad day, she has strong pains in her arms and she can't stand or walk much. AR 245. On those days, she lays down for a while and then does her chores little by little. AR 245.

Plaintiff indicated that at her prior production job, the heaviest thing she had to lift was around five pounds. AR 246.

Medical Record

Records from Hillman Health Center indicate that Plaintiff began complaining of headaches, leg and arm pain in March 1999. AR 163. She was not taking any medications and was prescribed Ibuprofen. AR 163. An x-ray of her cervical spine was normal. AR 168.

Plaintiff complained of back and knee pain in February 2001. On examination, her back and knees were tender, but there was no swelling, redness or decreased range of motion. AR 144.

In April 2001, Plaintiff complained of arm and leg pain for the past two weeks. Her right arm and leg were tender, but there was no swelling and she had good range of motion. She was diagnosed with arthritis and prescribed medication. AR 143.

Lumbar spine x-rays taken on June 28, 2001, revealed minimal scoliosis of the lumbar spine, minimal arthritis of the lumbar spine with slight narrowing of the L5-S1 disc space, and a Schmorl's node involving the inferior aspect of L5. AR 153. X-rays of the right hip and pelvis taken the same day were normal. AR 153.

In October 2001, at her annual examination, Plaintiff was "doing well." AR 139.

On October 18, 2002, Plaintiff was examined by Juliane Tran, M.D.  She complained of radiating back pain, arm pain and right forefoot pain.  Plaintiff indicated that her medications helped the pain 50 percent- on an average day without medication, her pain is a ten out of ten, on an average day with medication, her pain is a five out of ten.  Plaintiff reported that she can cook, do housework and vacuum, but cannot do yard work, mop or do dishes.  AR 121.

On examination, Plaintiff was able to walk to the examination room, sit comfortably and get on and off the exam table without problems or assistance.  AR 121.  Her gait was normal, but she complained of pain in her right foot when toe walking.  AR 122.  Her muscle strength was 5/5, but she complained of pain in her arms with testing.  There was slight tenderness to palpation at the right posterior shoulder joint, and bilateral biceps and triceps muscles.  AR 123.  Dr. Tran diagnosed pain in the back and upper extremities, most likely from degenerative joint disease or arthritis.  There may be "a hint" of bursitis of both shoulders.  Dr. Tran opined that Plaintiff would be restricted in activities that involve overhead reaching, lifting of more than 50 pounds occasionally or more than 20 pounds frequently, and activities that involve frequent bending, stooping, kneeling, crouching or prolonged standing for more than six hours.  AR 123.  Plaintiff was not restricted in fingering, grasping, climbing, balancing or working with heights.  AR 123.

On November 22, 2002, State Agency physician James Glaser, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently, stand and/or walk about six hours in an eight hour workday, and sit for about six hours in an eight hour workday.  She could not push or pull with her lower extremities because of varicosities.  She could occasionally kneel and crawl.  She was limited in overhead reaching.  AR 124-131.  These findings were affirmed in May 2003.  AR 131.

In December 2002, Plaintiff complained of left knee pain and swelling and said that almost all of her joints hurt.  On examination, she had good range of motion and no swelling.  She was assessed with arthritis.  AR 135.

On March 3, 2003, Plaintiff saw physician's assistant Joseph Idoni, and complained of leg pain and reported that her left foot was constantly painful.  There was no cyanosis, no pedal edema, normal pedal pulses, but her left feel was very tender to palpation.  He assessed left foot/heel pain and prescribed medication and ordered testing.  AR 157.

Plaintiff returned to PA Idoni on April 21, 2003, and reported that while she was taking Ibuprofen, the pain in her leg subsided.  The pain has returned since she finished the medication.  AR 201.  PA Idoni assessed bilateral foot pain and refilled her Ibuprofen 800 mg.

On May 20, 2003, Plaintiff saw PA Idoni and complained of left lateral calf pain for the past three months, characterized by a deep throbbing pain.  She had good range of motion of the left leg, no edema, cyanosis or clubbing, but had tenderness to palpation.  PA Idoni ordered a left leg ultrasound and bone scan.  AR 200.

On June 2, 2003, Plaintiff underwent an ultrasound of the left lower extremity to rule out deep vein thrombosis.  The ultrasound was negative.  AR 198.  Also on June 2, Plaintiff underwent a bone scan that revealed degenerative joint disease involving the mediolateral femoral compartments and the base of the first metatarsals bilaterally.  AR 199.

Plaintiff returned to PA Idoni on June 12, 2003, and indicated that she was still having pain, more in the sole of her feet, especially the right foot.  She indicated that it was very painful when she stepped on the floor.  Upon examination, the soles of her feet were tender and she had decreased range of motion in both hips.  He assessed right foot pain and hip degenerative joint disease according to the ultrasound and x-ray.  AR 197.

Plaintiff complained that her bilateral hip and leg pain was getting worse on July 18, 2003.  She requested that PA Idoni refer her to orthopedics regardless of the fact that she had no insurance and indicated that she would make a payment plan.  On examination, her bilateral feet were within normal limits, there was no pedal edema, swelling or tenderness.  AR 196.

On July 22, 2003, Plaintiff underwent x-rays of her lumbosacral spine.  The x-rays revealed mild rotary lumbar scoliosis, mild boney hypertrophic degenerative changes at a number of levels with progression since the prior examination in 1995, and osteitis condensans ilii.  AR 195.

On August 29, 2003, Plaintiff told PA Idoni that she was doing very well and taking her medications as recommended. She still had intermittent back pain. AR 193.

Plaintiff returned to PA Idoni on January 7, 2004, complaining of continuing pain. Her examination was normal and PA Idoni assessed left leg pain, scoliosis, and rule out hyperlipidemia. AR 192. He prescribed Ibuprofen 800 mg. AR 192.

Plaintiff saw Harish Shah on March 25, 2004, for treatment of hypertension. She also complained of chronic osteoarthritis pain in her back, hands and knees that has been controlled with Motrin 800 mg. On examination, there was no edema of the feet, and range of motion of the shoulder, elbow, knees and hips was normal and not painful. He diagnosed systolic hypertension and degenerative joint disease. AR 186. Dr. Shah prescribed Darvocet and Celebrex for pain and recommended physical therapy. AR 186.

Plaintiff saw Dr. Shah on May 3, 2004, but his notes are mostly illegible. AR 182. Also on May 3, Dr. Shah completed a Residual Functional Capacity Questionnaire. He indicated that he first saw Plaintiff in March 2004 and last saw her on May 3, 2004, for a total of two visits. He diagnosed her with degenerative joint disease and back pain. His findings included no tenderness, straight leg raises to 80 degrees, normal sensory and motor skills and normal gait. He indicated that Plaintiff felt better with Celebrex and Darvocet and had no side effects with the current doses. He opined that Plaintiff's pain and symptoms were never severe enough to interfere with attention and concentration, and that she could maintain attention and concentration for one hour at a time. Plaintiff may have to take unscheduled breaks during the workday, depending on her pain, but did not have to elevate her legs with prolonged sitting. He further opined that she could rarely lift and carry less than five pounds, occasionally perform movements with her neck, and could never twist, stoop, crouch, or climb ladders or stairs. Dr. Shah indicated that Plaintiff was capable of a low stress job. She could walk one to two blocks, could sit for one hour at a time, and stand for 30 minutes at a time. She could sit for about four hours total in an eight hour day and could stand/walk for four hours total in an eight hour workday. Plaintiff had significant limitations in performing repetitive reaching, handling or

fingering. Dr. Shah opined that Plaintiff would likely miss more than four days per month, and that her restrictions began on March 25, 2004. AR 204-208.

Plaintiff returned Dr. Shah on June 18, 2004, and complained of migraine-type headaches twice a week. She indicated that her back pain was controlled with Celebrex and Darvocet. He diagnosed migraine headaches, back pain and degenerative joint disease. AR 213.

Plaintiff returned to Dr. Shah on September 23, 2004, but his notes are mostly illegible. AR 211.

ALJ's Findings

The ALJ determined that Plaintiff's degenerative joint disease was a severe impairment. Despite this, he found that she retained the residual functional capacity ("RFC") to perform the full range of medium work. Specifically, he found that Plaintiff retained the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, and to stand/walk for six hours in an eight hour day. In making this finding, the ALJ reviewed the medical records and gave little weight to Dr. Shah's functional assessment. The ALJ also determined that Plaintiff's testimony was not fully credible. AR 17-20.

Given the RFC finding, the ALJ determined that Plaintiff could perform her past relevant work as a factory worker as she performed it. AR 19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

7

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative joint disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) could perform her past relevant work as a factory worker. AR 19-20.

Plaintiff argues that the ALJ (1) erred in failing to adopt the opinion of treating physician Dr. Shah; and (2) erred in finding Plaintiff only partially credible.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

8

# DISCUSSION

A.   Dr. Shah's Opinion

Plaintiff argues that the ALJ erred in failing to adopt Dr. Shah's May 3, 2004, assessment, and contends that the reasons given for the rejection are incorrect.

The medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).

The ALJ set forth Dr. Shah's May 3, 2004, assessment, but gave it little weight because (1) Dr. Shah had only examined Plaintiff once; (2) the severity of the stated limitations was inconsistent with the longitudinal treatment history; and (3) the opinion was refuted by the opinion of consultive orthopedist Dr. Tran. AR 18.

Plaintiff first faults the ALJ's conclusion because he incorrectly stated that Dr. Shah examined Plaintiff only once. As Plaintiff points out, at the time of the May 3, 2004, Dr. Shah had examined Plaintiff twice- once on March 25, 2004, and again on May 3, 2004. AR 182, 186. This error was harmless, however. The ALJ questioned Dr. Shah's restrictive assessment based on the lack of a longitudinal treatment relationship with Plaintiff. Thus, whether Plaintiff saw him once or twice is irrelevant as the treatment relationship was limited either way. The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527, 416.927. Factors that influence the weight given include the examining relationship, treatment

9

relationship, length of treatment relationship and frequency of examinations, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(d)(1)-(2), 416.927(d)(1)-(2). The ALJ was therefore entitled to give less weight to Dr. Shah's assessment based on his short treatment history.

Plaintiff next faults the ALJ for relying on the opinion of consulting orthopedist Dr. Tran instead of the assessment of Dr. Shah. Plaintiff contends that Dr. Tran's report predated the June 2, 2003, bone scan and July 22, 2003, x-rays, and that she did not review any records. Indeed, Dr. Tran's October 2002, examination predated the 2003 testing and she did not review any records. AR121. However, Dr. Tran's opinion took into account his examination and her belief that Plaintiff's pain was caused by degenerative joint disease, which is the diagnosis confirmed by the 2003 testing. AR 123. Moreover, at the time of Dr. Shah's assessment, he had performed only one more examination of Plaintiff than Dr. Tran, making the distinction between a "treating" and "examining" physician less meaningful.

In any event, the ALJ was entitled to rely on Dr. Tran's opinion in rejecting Dr. Shah's limitations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinions of examining physicians constituted "specific and legitimate reasons" for rejecting the opinions of treating physicians and that an examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent evaluation of [the claimant]").

In addition to questioning the length of Dr. Shah's treating relationship and discrediting his opinion based on that of Dr. Tran, the ALJ also thoroughly reviewed the medical evidence and concluded that it did not support Dr. Shah's assessment. AR 18. Other than degenerative joint disease, testing was generally normal. The only prescribed treatment was medication and numerous treatment notes indicate that Plaintiff was doing well with the medication. AR 139, 121, 201, 193, 186. In fact, even Dr. Shah indicates that Plaintiff's pain was controlled with medication, rendering his assessment in conflict with his treatment notes. AR 213. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1    The ALJ gave specific and legitimate reasons for rejecting Dr. Shah's restrictive
2 assessment.
3  B.    Plaintiff's Subjective Complaints
4    Next, Plaintiff argues that the ALJ erred in finding her only partially credible.
5    The ALJ is required to make specific findings assessing the credibility of plaintiff's
6 subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting
7 the complainant's testimony, "the ALJ must identify what testimony is not credible and what
8 evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.
9 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.
10 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the
11 severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
12 with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
13 discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).
14    "The ALJ may consider at least the following factors when weighing the claimant's
15 credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]
16 testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work
17 record, and testimony from physicians and third parties concerning the nature, severity, and effect
18 of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d
19 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in
20 the record, we may not engage in second-guessing." *Id.*
21    In examining Plaintiff's testimony, the ALJ compared her testimony to the medical
22 records and concluded that while her impairments could reasonably be expected to produce some
23 of the symptoms she alleged, the degree of alleged limitation was not supported by the medical
24 evidence.  AR 18-19; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).
25    Plaintiff points to her limited daily activities, her medications, and Dr. Shah's assessment
26 as supportive of her credibility.  However, Plaintiff's daily activities, which include cooking,
27 cleaning, shopping with her daughter, and attending church regularly, do not support the level of
28 limitation alleged.  AR 121, 240-241.  Similarly, Plaintiff's treatment with pain medication

11

appears to control her pain, and suggests a conservative approach to treatment. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Finally, Dr. Shah's assessment, for the reasons described above, does not enhance Plaintiff's credibility.

Plaintiff further argues that "her persistent efforts to obtain relief from Hillman Health Center" make her credible. Opening Brief, at 9. She explains that she was treated from March 2003 through September 2004, and was diagnosed with migraine headaches, back pain and degenerative joint disease. The fact that Plaintiff sought treatment and had multiple diagnoses, however, does not outweigh the factors above. Credibility determinations are the province of the ALJ. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Here, the ALJ's credibility determination was sufficient to allow the Court to conclude that he did not arbitrarily discredit claimant's testimony. *Thomas,* 278 F.3d at 958.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Carmen De La Cruz.


IT IS SO ORDERED.

Dated:   April 24, 2006                          /s/ Dennis L. Beck
3b142a                                        UNITED STATES MAGISTRATE JUDGE